IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAMELA SMITH, on behalf of her daughter, JANE SMITH (a pseudonym), and all others similarly situated, </br></br> Plaintiff, </br></br> v. </br></br> HEALTH CARE SERVICE CORPORATION, </br></br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) </br></br> No. 19 C 7162 </br></br> Judge John Z. Lee |

## MEMORANDUM OPINION AND ORDER

Pamela Smith is a beneficiary of an employer-sponsored health insurance plan administered by Health Care Service Corp. ("HCSC"). Her daughter, Jane (a pseudonym), was denied coverage by HCSC for residential treatment of her behavioral health conditions in 2018. On behalf of Jane and a putative class of all others similarly situated, Smith alleges that HCSC's denial of coverage for Jane's treatment was the result of improperly narrow residential treatment guidelines that HCSC continues to employ in making benefits determinations, in violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Now before the Court is HCSC's motion to dismiss Smith's second amended class action complaint. For the following reasons, the motion is granted, except to the extent that it seeks a dismissal with prejudice.

I. **Background**[1]

Smith and Jane are beneficiaries of a health and well-being plan ("the Plan") sponsored by Smith's employer, Telephone and Data Systems, Inc.; administered by HCSC; and governed by ERISA. 2d Am. Compl. ¶¶ 2, 6, ECF No. 59. The Plan covers treatment for sickness, injury, and "behavioral health" conditions like mental illness and substance use disorders, including residential treatment not limited to acute or emergency services. *Id.* ¶ 8; *see id.* ¶ 17. But the Plan provides benefits only, among other "essential condition[s]," if the services for which coverage is sought are "medically necessary," which the Plan defines as "appropriate and consistent with the diagnosis and which, in accordance with accepted medical standards in the state in which the service is rendered, could not have been omitted without adversely affecting the patient's condition or the quality of medical care rendered." *Id.* ¶ 11.

As the Plan's benefit claims administrator, HCSC (the fourth largest health insurance administrator in the nation, *id.* ¶ 3(a)) is responsible for making "all final and binding" determinations of whether services for which coverage is sought are covered under the Plan and for causing any resulting benefit payments to be made by the Plan. *Id.* ¶¶ 9–10. In making such determinations, HCSC has discretion to interpret the Plan's terms, including any limitations and exclusions, such as whether the services at issue are "medically necessary." *Id.* ¶¶ 3(b), 9.

As to the term "medical necessity," HCSC applies a uniform and internal definition in making all benefit determinations. *Id.* ¶ 12. This definition adopts

---

[1] The Court "accept[s] as true all well-pleaded factual allegations" in reviewing a motion to dismiss. *See Heredia v. Capital Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir. 2019).

2

certain behavioral health care guidelines devised by a company called MCG Health, LLC ("MCG"), including a subset of guidelines for residential treatment services ("the RTC Guidelines"). *Id.* ¶¶ 3(c), 16, 27. MCG assists claims administrators like HCSC to make "medical necessity" decisions by developing clinical coverage guidelines to serve as criteria for determining whether services are consistent with accepted medical practices.[2] *Id.* ¶¶ 15, 23.

HCSC licenses the RTC Guidelines from MCG and "systematically applies them to determine whether services for which coverage is sought are medically necessary," *id.* ¶ 22, including with respect to "the medical necessity determinations at issue in this case," *id.* ¶ 3(c). Yet, the complaint alleges, while the RTC Guidelines "purport[] to summarize accepted standards of medical practice," they use criteria that are "much more restrictive than those generally accepted." *Id.* ¶ 1; *see also id.* ¶¶ 17, 25, 28–30. At bottom, the RTC Guidelines view residential treatment as medically necessary only in the case of "acute" (or worse) behavioral health conditions, while minimizing the relevance of chronic, yet non-acute, conditions. *Id.* ¶¶ 26, 38–41.

Jane suffers from a variety of behavioral health conditions, including major depression, substance use disorder, and borderline personality disorder. *Id.* ¶ 49. On April 4, 2018, Jane was admitted for residential treatment of these conditions at Rogers Memorial Hospital ("Rogers"), an in-network facility in Wisconsin. *Id.*

---

[2] Smith's previous complaints named MCG as a second defendant, but Smith agreed to dismiss MCG before filing the operative complaint. *See* 3/3/20 Minute Entry, ECF No. 58 (granting Smith's unopposed motion to dismiss).

Smith requested insurance coverage for Jane's treatment at Rogers, but in a letter dated April 6, HCSC denied Smith's request on the ground that the treatment was not medically necessary, a determination HCSC made based on the RTC Guidelines. *Id.* ¶ 50. Rogers appealed the denial, which HCSC rejected by letter dated April 8. *Id.* ¶ 51.

Rogers discharged Jane on May 16, 2018, and on August 1, 2018, Smith submitted a post-service appeal of HCSC's denial. Eventually, HCSC ultimately approved coverage for the first six days of Jane's residential treatment, but denied coverage for the remainder—from April 10 through May 16—again citing the RTC Guidelines. *Id.* ¶ 52. External review upheld that decision. *See id.* ¶¶ 53–57. As a result, Plaintiff incurred significant out-of-pocket expenses for the remainder of Jane's treatment at Rogers. *Id.* ¶ 58.

Smith filed this suit on behalf of Jane and a putative class of all similarly situated beneficiaries.[3] Her class action complaint asserts two substantive claims under 29 U.S.C. § 1132(a)(1)(B) in connection with HCSC's use of the RTC Guidelines *See id.* ¶¶ 70, 77. Count I alleges that HCSC breached its fiduciary duties by adopting the RTC Guidelines to make coverage determinations regarding residential treatment of behavioral health conditions. *Id.* ¶¶ 69–75. Count II alleges that HCSC violated the terms of the Plan by denying Smith's coverage request for Jane's residential treatment based on the RTC Guidelines. *Id.* ¶¶ 76–80.

---

[3] The putative class includes "[a]ny member of a health plan governed by ERISA whose request for coverage of residential treatment services for a behavioral health disorder was denied by HCSC, in whole or in part, . . . based on the [RTC Guidelines] or other [] Behavioral Health Guidelines that contain the same coverage criteria." 2d Am. Compl. ¶ 61.

The remaining two counts in the complaint request certain remedies for these alleged violations of § 1132(a)(1)(B). Count III seeks to enjoin HCSC's ongoing use of the RTC Guidelines, *id.* ¶¶ 81–84, while Count IV seeks "other appropriate equitable relief," including an order compelling HCSC to reprocess Smith's coverage request and a declaration that the RTC Guidelines are (and were) inconsistent with generally accepted standards of medical practice, *id.* ¶¶ 85–88.

HCSC has moved to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. Dismiss ("Mot."), ECF No. 60.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). Determining whether a claim for relief has facial plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In reviewing a motion to dismiss, the reviewing court "must take all of the factual allegations in the complaint as true." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). At the same time, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* Otherwise stated, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim on which relief can be granted. *Iqbal*, 556 U.S. at 678.

### III. Analysis

HCSC's opening brief raises three primary arguments. *See* Def.'s Mem. Supp. Mot. Dismiss ("Mem.") at 4–15, ECF No. 61. First, HCSC contends that Smith's substantive ERISA claims (Counts I and II) fail because, as the Plan administrator (as opposed to the Plan sponsor), it is not a proper defendant under § 1132(a)(1)(B). Second, and alternatively, HCSC asserts that Smith fails to adequately allege her § 1132(a)(1)(B) claims. And third, HCSC assails Smith's remedial claims under § 1132(a)(3) (Counts III and IV) as duplicative of her § 1132(a)(1)(B) claims.

Additionally, HCSC argues for the first time in its reply brief that Smith has failed to allege the elements of Article III standing. *See* Def.'s Reply Supp. Mot. Dismiss ("Reply") at 1–3, ECF No. 78. Given the dispositive nature of this issue, the Court permitted Smith to file a surreply brief to address this argument.

As a preliminary matter, Smith contends that HCSC has waived this argument by failing to raise it in its opening brief. *See* Pl.'s Surreply Opp'n Mot. Dismiss ("Surreply") at 2, ECF No. 81. But, of course, whether a plaintiff has Article III standing is a jurisdictional issue that cannot be waived. *Chi. Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 814–15 (7th Cir. 2018). And as a "threshold requirement" of federal litigation, the Court is dutybound to address this issue first.[4] *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).

---

[4] Although a dismissal for lack of standing falls under Rule 12(b)(1), the legal standard is the same as under Rule 12(b)(6). *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).

The elements of Article III standing are well-established. "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of . . . ." *Id.* "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (cleaned up). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* And, as the Supreme Court recently made clear, there "is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020).

Here, Smith asserts that she has alleged "two distinct" injuries-in-fact: "a denial of benefits" and "a reduction in available coverage." Surreply at 2; *see* 2d Am. Compl. ¶¶ 44, 47–58, 74, 78–79. The Court addresses each in turn.

### A. Denial of Benefits

An improper denial of vested ERISA benefits is the quintessential injury-in-fact supporting a violation of § 1132(a)(1)(B). *See Thole*, 140 S. Ct. at 1619. Indeed, that provision expressly empowers a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan" (among other, similar relief). 29 U.S.C. § 1132(a)(1)(B). Here, however, the complaint suffers from numerous deficiencies.

"The first and critical allegation" of a violation of § 1132(a)(1)(B) is that the plaintiff was "entitled to benefits under the terms of an employee-benefits plan."

7

*Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013). The complaint "must also provide the court with enough factual information to determine whether the services were indeed covered services under the plan." *LB Surgery Ctr., LLC v. United Parcel Serv. of Am., Inc.*, No. 17 C 3073, 2017 WL 5462180, at *2 (N.D. Ill. Nov. 14, 2017) (cleaned up). To that end, plaintiffs sometimes "attach the relevant plan documents to the complaint as insurance against the risk that the complaint's description of the plan's terms is ambiguous or otherwise deficient." *Brooks*, 729 F.3d at 764.

Here, Smith's complaint does not allege that she was entitled to the benefits under the Plan that she did not receive. And it "is notable for what it does not contain." *See id.* For instance, the complaint neither attaches any of the relevant Plan documents, including the RTC Guidelines, nor quotes their relevant portions in full. Nor does the complaint describe any of the "essential condition[s]" of coverage other than medical necessity, s*ee* 2d Am. Compl. ¶ 11, or allege that Jane's residential treatment satisfied them. In fact, Smith herself concedes that her claims "are not premised on the allegation that Jane was entitled to benefits under the [] Plan that she did not receive." Resp. at 8.

Even if Smith had alleged that HCSC's denial of benefits was improper, she would nonetheless lack standing to pursue the "combination of injunctions and other equitable relief" that she seeks in the complaint. *See* Pl.'s Resp. Opp'n Mot. Dismiss ("Resp.") at 1, ECF No. 75. Specifically, instead of monetary damages, Smith requests injunctive relief both to prevent HCSC from applying the RTC Guidelines to future coverage requests and to compel HCSC to reprocess her previously denied

8

coverage request using appropriate guidelines. *See* 2d Am. Compl. ¶¶ 84, 88(E)–(F). She also prays for a declaration that the RTC Guidelines are (and were) inconsistent with generally accepted standards of medical practice. *See id.* ¶ 88(D). And Smith premises these requests for relief, at least in part, on HCSC's denial of coverage for Jane's treatment at Rogers. *See id.* ¶¶ 82, 86.

Even assuming *arguendo* that HCSC improperly denied Smith's coverage request, such "[p]ast exposure to illegal conduct" would not confer standing upon Smith to seek prospective forms of relief absent "a real and immediate threat of repeated injury." *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (reiterating that a "likelihood of substantial and immediate irreparable injury" is a "basic" prerequisite to seeking prospective equitable relief (quoting *O'Shea*, 414 U.S. at 502)); *Vickers v. Henry Cty. Sav. & Loan Ass'n*, 827 F.2d 228, 231 (7th Cir. 1987) (noting the same of prospective declaratory relief). Thus, in order to pursue injunctive or declaratory relief from HCSC's future use of the RTC Guidelines, Smith must allege that Jane "is likely to be injured again in the near future, that [s]he would then submit a claim to Defendant, who would then deny this claim in violation of ERISA, and that this denial of medical coverage would result in an injury not subject to a remedy at law." *See Bellanger v. Health Plan of Nev., Inc.*, 814 F. Supp. 914, 917 (D. Nev. 1992).

Smith fails to allege "a real and immediate threat of repeated injury" here. *See O'Shea*, 414 U.S. at 496. Notably, while the complaint alleges that HCSC continues to use the RTC Guidelines to process coverage requests for residential

9

treatment, it fails to allege that there is any likelihood that Jane will ever seek residential treatment again in the future, let alone "in the near future." *See Bellanger*, 814 F. Supp. at 917. As if to demonstrate this point, Smith relies only on the complaint's assertions that "Plaintiff and the class are likely to be harmed in the future." *See* 2d. Am. Compl. ¶¶ 83, 87. These "[t]hreadbare recitals" of the required injury-in-fact to pursue prospective equitable relief, "supported by mere conclusory statements, do not suffice" to carry Smith's burden. *See Iqbal*, 556 U.S. at 678.

As for the somewhat retrospective forms of equitable relief that Smith seeks—*i.e.*, a declaration that the RTC Guidelines were unlawful as applied to her coverage request and an injunction compelling HCSC to reprocess that request using appropriate guidelines—they fall for another reason. Such relief is typically not available under ERISA where Congress "has 'elsewhere provided adequate relief' for the plaintiff's injury"—namely, an award of benefits due under the plan. *See Mohammed v. Prudential Ins. Co. of Am.*, No. 19 C 3258, 2020 WL 4569696, at *4 (N.D. Ill. Aug. 7, 2020) (quoting *Varsity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *see also O'Shea*, 414 U.S. at 502 (reiterating the bedrock rule that equitable relief is unavailable where remedies at law are adequate). And here, it stands to reason that any injury inflicted by HCSC's past denial of benefits for Jane's residential treatment would be adequately remedied by an award of those benefits—a remedy that Smith has expressly disclaimed. *See* Resp. at 5 ("Plaintiff does not seek a Court award of benefits."). The upshot is that Smith may not forgo an award of damages only to seek *less* adequate forms of equitable relief for HCSC's denial of benefits.

10

B.     **Reduction in Available Coverage**

That leaves Smith's second asserted injury-in-fact: "a reduction in available coverage" due to HCSC's ongoing use of the RTC Guidelines to process coverage requests. Surreply at 2; *see* 2d Am. Compl. ¶¶ 74, 78. The Court agrees with HCSC that such an injury does not pass muster under Article III.

A key premise in the Supreme Court's standing jurisprudence is that a plaintiff "does not . . . automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016). Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* (holding that "a bare violation" of the Fair Credit Reporting Act, premised on inaccurate reporting yet "divorced from any concrete harm," did not satisfy the injury-in-fact requirement). "Put different, the deprivation of a right created by a statute must be accompanied by 'some concrete interest that is affected by the deprivation.'" *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 529 (5th Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549); *cf. Lujan*, 504 U.S. at 573 (rejecting the view that the injury-in-fact element may be "satisfied by congressional conferral upon *all* persons of an abstract, self-contained, noninstrumental 'right'"); *Lyons*, 461 U.S. at 101 ("Abstract injury is not enough.").

*Lee* is instructive on this point. In *Lee*, the plaintiff-beneficiary argued that a "bare allegation of incursion on the purported statutory right to 'proper plan management' under ERISA" sufficed to meet the injury-in-fact prong of Article III

11

standing. 837 F.3d at 529. The Fifth Circuit disagreed, finding that such an incursion must be accompanied by a "material risk" of concrete harm. *Id.* at 529–30 (quoting *Spokeo*, 136 S. Ct. at 1549); *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) ("[T]he plaintiff must show that the statutory violation presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect by enacting the statute." (cleaned up)). Thus, because "there was no allegation of a real risk" that the plaintiff's "concrete interest in the plan"—*i.e.*, "his right to payment"—would be affected by the purported statutory deprivation, the court concluded that he failed to show an injury-in-fact. *Lee*, 837 F.3d at 530; *cf. Thole*, 140 S. Ct. at 1618–19 (holding that a bare violation of ERISA's fiduciary duties, untethered to any "monetary injury" or other concrete harm, is not an injury-in-fact); *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 728–29 (7th Cir. 2016) (citing *Lee* favorably in holding that, "without a showing of injury apart from the statutory violation [under 15 U.S.C. § 1681c(g)(1)], the failure to truncate a credit card's expiration date is insufficient to confer Article III standing").

The same result follows here, where a bare incursion on the purported statutory right to more generous "medical necessity" guidelines with regard to residential treatment services is all that Smith has alleged. Indeed, Smith fails to tether this abstract injury—one shared equally by each of the "more than 16 million" individuals with a health plan administered by HCSC, *see* 2d Am. Compl. ¶ 3(a)—to any concrete harm to her underlying interest in the Plan, *i.e.*, her right to receive benefit payments. That is so because, as discussed above, Smith shows neither that

12

Jane *was* improperly denied benefits in the past, nor that Jane likely *will be* improperly denied benefits in the future, on account of the RTC Guidelines. This conclusion is unchanged by Smith's assertions that HCSC's adoption of the RTC Guidelines "shifted some of the risk from itself . . . to the participants and beneficiaries of the plans." *Id.* ¶ 44; *see also id.* ¶¶ 48, 74. After all, these assertions merely recharacterize the alleged reduction in coverage under the Plan, while still failing to link that abstract injury to any "risk of *real* harm." *See Lee*, 837 F.3d at 529 (quoting *Spokeo*, 136 S. Ct. at 1549 (emphasis added)).

*Johnson v. Allsteel, Inc.*, on which Smith relies, is not to the contrary. 259 F.3d 885 (7th Cir. 2001). In *Johnson*, the plaintiff-beneficiary alleged that the defendant-employer violated ERISA by unilaterally amending one of the plan's provisions, in violation of the plan's plain language, so as "to grant itself discretion to resolve all questions arising under the Plan," including with regard to eligibility for benefits. *Id.* at 887. In finding that these allegations satisfied the injury-in-fact requirement, the Seventh Circuit emphasized that the amendment had granted the defendant "unchanneled discretion to deny claims," *id.* at 890, including the ability to evade judicial scrutiny of its denials, given that, under ERISA, "[t]he scope of judicial review varies in accordance with the extent of discretion afforded the administrator, *id.* at 889 (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *see id.* at 888–90. In light of this drastic "increase in discretion," the court found a "likelihood" that the plaintiff would, "at some point" in the future, suffer an improper denial of benefits as a result. *See id.* at 890. The same cannot be said

13

here given that the complaint provides no factual content supporting a likelihood that Jane will need residential treatment again at *any* point in the future, as discussed above.[5]

Accordingly, neither of Smith's asserted injuries-in-fact satisfy Article III, requiring dismissal of her complaint.[6] But, while HCSC asks the Court to dismiss the complaint with prejudice, the Court finds that a dismissal without prejudice is more appropriate. This is the first complaint the Court has ruled on in this case, and HCSC does not show that it would be impossible for Smith to fix the defects identified above. *Cf. Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity . . . to amend the complaint to correct the problem if possible."). Thus, the Court will afford Smith one more opportunity to amend her complaint.

---

[5] To the extent *Johnson* suggests that a mere "shifting [of] risk" to the beneficiary as a result of the defendant's conduct constitutes an injury-in-fact, *see* 259 F.3d at 888, as Smith insists, the Court finds that this language is dictum whose persuasive value has been eroded by the Supreme Court's more recent Article III standing jurisprudence. Indeed, just last term, a majority of the Court implicitly rejected the sort of "loss or depreciation in value" theory that at times appears to undergird *Johnson*'s discussion of injury-in-fact. *See Thole*, 140 S. Ct. at 1626 (Sotomayor, J., dissenting) (cleaned up); *cf. Johnson*, 259 F.3d at 888 ("[W]hen Allsteel increased its discretion as plan administrator, it simultaneously decreased the value of [the plaintiff's] bargained-for-entitlements, causing him injury-in-fact."). Moreover, the Seventh Circuit has since observed that Article III requires a plaintiff to "show that the statutory violation presented an *appreciable* risk of harm to the underlying concrete interest that Congress sought to protect by enacting the statute." *Groshek*, 865 F.3d at 887 (citing *Spokeo*, 136 S. Ct. at 1549–50 (emphasis added)); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (recognizing that a "*substantial* risk" of imminent future injury suffices to satisfy Article III (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (emphasis added))).

[6] Because Smith fails to allege Article III standing, the Court has no occasion, and no jurisdiction, to consider HCSC's remaining arguments. *See Bazile*, 983 F.3d at 277–78.

## IV. Conclusion

For the foregoing reasons, HCSC's motion to dismiss is granted in part and denied in part. Smith's second amended class action complaint is dismissed without prejudice. To the extent Smith can correct the defects identified herein, she may submit a third and final amended complaint no later than March 29, 2021.

**IT IS SO ORDERED.**  ENTERED  3/15/21

*/s/ John Z. Lee/*

_____

**John Z. Lee**
**United States District Judge**